[Sac. No. 1827. In Bank.—August 3, 1912.]

ELIZA J. SCHWARTZ, Respondent, v. CALIFORNIA GAS
    AND ELECTRIC CORPORATION (a Corporation),
    PACIFIC GAS AND ELECTRIC COMPANY (a Cor-
    poration), and BAY COUNTIES POWER COMPANY
    (a Corporation), Appellants.

Negligence—Electric Power Company—Negligent Dropping of In-
    sulator in Pasture—Injury to Horse—Removal of Insulator
    by Third Person—Instructions.—In an action against an electric
    power company to recover damages for injuries to a horse caused
    by the horse stepping upon or against an insulator alleged to have
    been negligently dropped by an employee of the defendant upon a
    tract of land occupied by the plaintiff, in which the horse was being
    pastured at the time of such injuries, where there was evidence
    warranting the inference that the insulator was dropped at an
    entirely different place and was removed therefrom to the place of
    the accident by some third party, it was error for the court to refuse
    to give an instruction requested by the defendant which limited
    its liability to a negligent act of its employee in placing the in-
    sulator on the premises where it was claimed the horse was injured,
    "and at the point where the evidence shows said horse was in fact
    injured," and to instruct them that the defendant would be liable if
    its employee negligently placed or permitted the insulator to remain
    on said premises "and at a point where the evidence shows some
    injury might result."

Id.—Removal of Insulator Proximate Cause of Injury.—If the de-
    fendant carelessly dropped the insulator upon such premises and
    did not remove it, it would be guilty of negligence, but after it
    was dropped, if somebody else picked it up and moved it to the spot
    where the damage was done, it was the negligence of the latter that
    proximately caused the injury.

Id.—Actionable Negligence—Interposition of Independent Cause.—
    An injury is not actionable which would not have resulted from the
    act of negligence, except for the interposition of an independent
    cause.

Id.—Instructions—Assumption of Fact.—In such action an instruc-
    tion requested by the defendant that the jury could not find for
    the plaintiff unless they believed from the evidence "that the plain-
    tiff's horse was injured by an insulator, the property of the de-
    fendant, and that an employee of the defendant negligently placed
    said insulator on the premises where it is claimed said horse was
    injured, and at a point where the evidence shows said horse was
    in fact injured," is not erroneous as assuming as a fact that the
    horse was not injured.

APPEAL from a judgment of the Superior Court of Yolo County and from an order refusing a new trial.   N. A. Hawkins, Judge.

The facts are stated in the opinion of the court.

William B. Bosley, John P. Coghlan, and Charles W. Thomas, for Appellants.

Arthur C. Huston, and Harry L. Huston, for Respondent.

THE COURT.—This action was brought to recover damages for injuries to a horse known as "Joe Terry" belonging to plaintiff, caused, it is alleged, by the horse stepping upon or against an insulator dropped by an employee of defendants upon a tract of land in Yolo County known as the "Van Zee Place," occupied by plaintiff at the time of such injuries. The jury gave a verdict in favor of plaintiff for the sum of $6,475, for which amount judgment was entered.   An appeal was taken by defendants from the judgment and from an order denying their motion for a new trial.   Two decisions have been rendered on these appeals by the district court of appeal for the third district, the judgment and order being reversed by the first decision on account of error of the trial court in refusing an instruction as requested by defendants and giving the same in a modified form, and a rehearing having been granted by said court, the judgment and order were affirmed by the second decision.   An application for a hearing in this court was then granted.

We are of the opinion that the first decision of the district court of appeal was correct.   It is essential to a proper understanding of the question presented in the matter of said instruction that a statement be made as to some of the facts.

The defendants maintained and operated an electric transmission line, consisting of poles, cross-arms, wires and insulators, along certain highways in Yolo County, and the line passed the "Van Zee Place" just outside the city of Woodland.   In the summer and early autumn of the year 1906 the line was reconstructed by defendants, new insulators put in on many poles, and every alternate pole removed, making the distance between poles 264 feet, instead of 132 feet, which was the distance prior to the reconstruction.   At the time of

this work the "Van Zee Place" was occupied by one L. E. Hutchings. A portion of this place consisted of an inclosed parcel of land fronting on the road, on which was a house, and another adjoining inclosed parcel on which was a barn. The land inclosed with the barn was known as the barnyard or corral. The land inclosed with the house was known as the houseyard and old vineyard. The vineyard portion fronted on the road and contained some ten or twelve rows of vines, varying, according to the testimony of Mr. Schwartz, the husband of plaintiff, from two inches to three feet in height. The inclosed portion containing the vineyard was not used by Mr. Hutchings for stock. Some time in November, 1906, plaintiff leased from Mr. Hutchings the two parcels of land we have referred to, and went into occupancy thereof. On April 10, 1907, plaintiff's husband turned the horse into this old vineyard portion while his stall was being cleaned. A few minutes later, the stall having been cleaned, he went after the horse to take him back. He testified: "As I started to halter him he bit at me and I stepped back. I stepped back and corrected him for attempting to bite me. I held the halter for him to put his nose in, and the horse, in stepping back to put his nose in the halter, moved back and came in contact with something, which I found afterwards was a broken insulator." The insulator was similar to those in use on defendants' line at the time the reconstruction work was done, some of which were then removed. They had an eleven-inch porcelain top, shaped something like a saucer, and a glass center about nine inches long, and weighed about twelve pounds. Mr. Schwartz said that the saucer part of this insulator was whole and laid next to the ground. The result of the contact of the horse with this insulator, the glass part of which was broken, was, according to Mr. Schwartz, that the horse was severely cut on the right hind foot between the hoof and the fetlock. The horse was a stallion and valuable only for breeding purposes, and there was testimony sufficient to sustain a conclusion that he was thereby rendered useless for such purposes. There was testimony given by one William Weight, who was over eighty years of age and who was employed by Hutchings on the "Van Zee Place" at the time of such reconstruction work in the summer and autumn of 1906, to the effect that he saw one of the men engaged in such work

drop an insulator from the cross-arm of one of the poles into this vineyard, and that the insulator fell into the vineyard at the northwest corner, some seven or eight feet from the fence. This testimony was given some two years after the accident to the horse. He said that he saw the insulator in the vineyard many times thereafter, "passed it nearly every day," but did not pick it up because it did no harm there, and that they were not using the vineyard for stock. It was clearly established that the horse was injured in the northwest corner of the vineyard, and Mr. Schwartz said that the insulator was at a point two or three feet from the north fence and between six and ten feet from the west fence, which was the road fence. Evidence introduced by the defendants was very clear to the effect that at the time this work was done by the defendants, the nearest pole to the northwest corner of the vineyard on one side was sixty feet and on the other side seventy-two feet. Mr. Hutchings, then and for many years prior occupant of the place, testified in effect that there had been no change in the poles except that every other pole was taken out, and his testimony and that of Mr. Ashley, taken together, is clearly to the effect already stated. This evidence was in no way contradicted except in so far as it was inferentially contradicted by the evidence of Mr. Weight, to which we have already referred.

In the light of these facts, which we have stated as strongly in favor of plaintiff as the record warrants, the district court of appeal in its first opinion declared in part as follows:—

"Many points are made for a reversal of the judgment. Most of them are without merit, some of them probably involve error without prejudice, but one necessitates, as we view it, a new trial of the action.

"Defendants requested the court to instruct the jury as follows: 'You cannot find for the plaintiff in this case unless you believe from the evidence:

"1. That plaintiff's horse was injured by an insulator, the property of defendants. 2. That the employees of defendants negligently placed said insulator on the premises where it is claimed said horse was injured 'and *at the point where the evidence shows said horse was in fact injured.*' As given by the court the second subdivision was modified to read as follows: 'That the employees of defendants negligently placed

or permitted said insulator to remain on the premises where it is claimed said horse was injured, *and at a point where the evidence shows some injury might result.'*

"In the language of appellants: 'As proposed, this instruction limited responsibility to the placing of the insulator at the point where the horse was injured. The modification made the defendants liable if they placed it anywhere on the premises.'

"The proposed instruction was based upon the theory that an intervening, independent agency may have been the proximate cause of the injury. It seems plain, that if appellants carelessly dropped the insulator upon the premises and did not remove it they would be guilty of negligence, but after it was dropped if somebody else picked it up and moved it to this spot where the damage was done, it was the negligence of the latter that proximately caused the injury.

"It would not be a case of correlative and concurring causes, but of proximate and remote agencies independent of each other. The rule is well settled that an injury is not actionable which would not have resulted from the act of negligence, except for the interposition of an independent cause. (*Chicago etc. Ry. Co.* v. *Elliott,* 55 Fed. 949, [20 L. R. A. 582, 5 C. C. A. 347] ; *Cole* v. *German Savings and Loan Society,* 124 Fed. 115, [63 L. R. A. 416, 59 C. C. A. 593] ; *Western Union Tel. Co.* v. *Schriver,* 141 Fed. 550, [4 L. R. A. (N. S.) 678, 72 C. C. A. 596].)

"In the Cole case, it appears that the plaintiff entered and passed along a hall in the building of the defendant to take the elevator, the well or shaft of which opened into the hall. A boy, who was a stranger to her and to the defendant, hurried past her in the hall, pushed the sliding door of the well of the elevator, which was open from one to ten inches, back as far as it would go and stepped back. The plaintiff supposed the boy was the operator of the elevator, and stepped in. The elevator was at an upper floor in charge of its regular operator, and plaintiff fell to the bottom of the well and was injured. The hall was so dark that it was difficult, but not impossible, to see the elevator when it was at the lower floor, and when it was not there nothing but darkness was visible in the well. It was held that the negligent acts and omissions of the defendant were not and those of the strange boy were,

the proximate cause of the injury. 'The latter constituted an independent intervening cause which interrupted the natural sequence of events between the negligence of the defendant and the injury of the plaintiff, insulated the defendant's negligence from the plaintiff's hurt, broke the causal connection between them and produced the injury.' The negligence of the defendant in that case, as stated by the court, consisted of permitting such a degree of darkness in the hall, of allowing boys to ride upon and sometimes operate the elevator, of neglecting to provide a lock for the door which would prevent any one from unlocking it from the outside and of permitting the door to stand open from one to ten inches. Defendant there was indeed guilty of gross negligence, but it was held not to be the proximate cause of the injury.

"In *Berry* v. *San Francisco & N. P. R. R. Co.*, 50 Cal. 435, it was held that the injury done to plaintiff's wheat by the hogs of third persons was not the direct damage resulting from the trespass of defendant in destroying a portion of plaintiff's fences by reason of which the hogs obtained access to said premises.

"In *Loftus* v. *De Hail*, 133 Cal. 214, [65 Pac. 379], the action was brought to recover damages for injuries sustained by the plaintiff, an infant seven years of age, from falling into a cellar of defendants, situated on a vacant lot in the city of Los Angeles. The defendants were the owners of the lot, which was located in a populous and thickly settled quarter of the city. Upon the lot had stood a house, which had been removed, leaving upon the premises a cellar partially filled with debris. The premises were left in an open and unguarded condition. The plaintiff lived in the neighborhood of the lot, and, upon the day of the accident, was engaged with other children in playing around the cellar, and while so engaged was by her younger brother pushed into the cellar, sustaining the injuries complained of. It was held by the court that his act was the proximate cause of the injury, and that 'it was not in her play and as part of her play and in ignorance of the danger of her play, but she was injured by the violence of her little brother in a matter apart.' The foregoing are a few of many cases illustrating the operation of an independent proximate cause producing injury, and

they seem to be in harmony with the principle embodied in said proposed instruction here.

"Of course, if there were no evidence in the record tending to support said theory the court's action would be adjudged entirely without prejudice. While there was no direct evidence that any third party moved said insulator, circumstances do appear from which a rational inference might be drawn to that effect, and therefore it was a proper question to submit to the jury. The only witness who testified that he saw the insulator fall from the pole was one William Weight, an old man past eighty, who admitted his eyesight was bad. He testified that he was employed on the 'Van Zee' Place during the summer and forepart of the fall of 1906, when it was occupied by Lee Hutchings. 'During that time men worked on the electric pole line. They were changing insulators and putting up wires and one of the men dropped an insulator into the northwest corner of the vineyard. The man was on a cross-bar when he dropped the insulator, which was as large as a cuspidor.' Other evidence shows clearly that the nearest pole to the northwest corner of the vineyard was sixty feet, and in another direction there had been one seventy-two feet from the corner. The insulator weighed twelve pounds and the poles were thirty feet high. It was, therefore, quite a probable inference that within the eight or nine months intervening before the accident some other party moved the insulator, as it could not have 'dropped' to a point on the ground sixty or seventy feet from the foot of the pole.

"To this complaint by appellants of the action of the court in refusing said instruction the only answer made by respondent is as follows: 'The modification of instruction 18 was proper because the instruction as proposed was erroneous in that it was an instruction as to the facts. The language of subdivision 2 of the instruction was a straight statement that the evidence shows that the horse was not injured.' In this respondent is clearly in error. The instruction is altogether hypothetical, it does not assume any fact as proven, but states what must be shown to justify a verdict for plaintiff. The point seems to be a vital one in the case and it is believed that the defendants were entitled to the instruction and for this reason the judgment and order are reversed."

Learned counsel for plaintiff ably and earnestly assailed this opinion and the consequent judgment of reversal in their petition for a rehearing in the district court of appeal, and in their brief filed subsequently in this court, but we believe that it correctly disposes of this appeal. Some of the points so made by counsel are sufficiently disposed of by such opinion. We are of the opinion that the requested instruction was not an instruction as to the facts, and that it correctly stated the law applicable in view of the testimony. We are satisfied that none of the instructions given the jury substantially covered the subject matter of the requested instruction, in so far as the same referred to the question of an intervening, independent agency. We do not consider *Merrill* v. *Los Angeles etc. Co.*, 158 Cal. 499, [139 Am. St. Rep. 134, 111 Pac. 534], in any way opposed to our conclusion herein.

The judgment and order denying a new trial are reversed.

Mr. Justice Sloss deeming himself disqualified, does not participate herein.

Rehearing denied.