[S. F. No. 6354.   Department Two.—July 6, 1914.]

ARMIN THOMAS, Respondent, v. GERMAN GENERAL BENEVOLENT SOCIETY (a Corporation), Appellant.

NEGLIGENCE—OPEN ELEVATOR SHAFT—INJURY TO EMPLOYEE—PROXIMATE CAUSE.—Where the *chef* or head cook of a hospital maintained by a benevolent society uses a freight elevator to go from an upper floor to the basement for kitchen supplies, and on his return to the elevator after securing the desired articles walks in the darkness through the doorway of the elevator and falls into the shaft,

a fellow-employee under the control of the *chef* having in the meantime moved the elevator to another floor without closing the door or giving the customary signal, the negligence of such fellow-servant is the proximate cause of the resulting injuries to the *chef* and bars his right to recover from the society, although the society had not complied with a municipal ordinance requiring automatic closing gates for the elevator.

ID.—FAILURE OF EMPLOYER TO PERFORM STATUTORY DUTY—INJURY TO EMPLOYEE.—Where an employee predicates negligence upon the failure of his employer to perform a duty commanded by statute or ordinance, he must make it appear that the violation of the statute or ordinance was the proximate cause of the injuries complained of. The employee cannot recover if the injury was not the result of the violation of law by the employer, but the result of the negligence of a coemployee.

ID.—CHARITABLE INSTITUTION—LIABILITY FOR NEGLIGENCE.—Where one accepts the benefit of a public or of a private charity, he exempts, by implied contract, the benefactor from liability for the negligence of the servants in administering the charity, if the benefactor has used due care in the selection of those servants.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge.

The facts are stated in the opinion of the court.

John Ralph Wilson, for Appellant.

Arthur Brand, and Russell P. Tyler, for Respondent.

HENSHAW, J.—This action is an action for damages growing out of personal injuries suffered by plaintiff while he was in defendant's employ. The verdict of the jury was for plaintiff, and from the judgment which followed defendant appeals.

Plaintiff was the *chef* or head cook of the large hospital maintained by defendant. He had charge of the kitchen service. Under him were subordinate cooks and other assistants—a butcher, a vegetable man, a confectioner, a store keeper, porters and dishwashers. The kitchen was located upon the fifth floor of the hospital building, and from this floor an elevator ran to the basement, in which the storeroom was located. It was an electric elevator, and was operated by pulling a rope which ran perpendicularly through the ele-

vator cage. It was so constructed that it would stop automatically upon the fifth floor and at the basement. It did not so stop automatically at the intermediate floors. This elevator was designed for the carrying of freight, consisting of kitchen supplies, which were thus transported from the storeroom in the basement to the kitchen upon the fifth floor. In the elevator was posted a conspicuous sign bearing the words, "For freight only. No passengers allowed." Nevertheless it was the known practice of the kitchen staff and other employees themselves to use this elevator. Plaintiff had himself frequently used it in transporting himself from the kitchen to the basement to take an inventory of the storeroom supplies, and to order the transportation of meats, vegetables, and the like to his kitchen.

Upon the day of the accident the directors of the defendant society were dining at the hospital. A waiter reported to the *chef* that cheese was desired for their dinner. There was no cheese in the kitchen; and the *chef* himself entered the elevator and lowered himself to the basement floor, there to procure the desired article. This elevator was not equipped with automatic closing gates in front of the shaft, but was equipped with well constructed doors closed by hand. It was the practice and duty of the employees when they moved this elevator to ring the bell connected therewith, and to close the gate. Plaintiff, on leaving this elevator in the basement, so closed the gate. He found the basement dark, and called to the store-keeper, telling him what he wanted. The store-keeper turned on a light in the compartment of his storeroom containing the cheeses; and plaintiff took upon his right arm such of the cheeses as he desired and started to return to the elevator. During the time of his absence the confectioner, a fellow-employee and under the control of the plaintiff, opened the gate, entered the elevator and ascended to an upper floor without either ringing the bell or closing the gate behind him. Plaintiff moved along the darkened passageway with the cheeses on his right arm, and his left arm extended, believing that the elevator gate was closed as he had left it, and that his extended hand would encounter it. The gate being open, he stepped into the elevator shaft, and received the injuries complained of.

The complaint charged upon the facts above stated, and in addition upon the violation of an ordinance of the city and

county of San Francisco, to the effect that "All freight elevator shafts must be provided at each floor through which they pass with the latest and best appliance, style and design of automatic closing safety gates."

Appellant's first propositions are that the evidence clearly establishes a thorough knowledge upon the part of the plaintiff of the appliance which he voluntarily used; that this appliance was not in itself mechanically imperfect, and that his assumption of risk in the use of it is clearly established, and bars his recovery. In the same connection and as related to this, the contributory negligence of plaintiff is urged, herein it being insisted that it was no part of plaintiff's duty to go to the basement for this supply; that he was the *chef*, and his duties were limited to the preparation of menus, the cooking of the food, and the general supervision of his kitchen staff; that he was a mere volunteer in going to the basement, and that if the basement was dark, as he declares, it was manifestly a part of his duty to call upon his subordinate, the store-keeper, to turn on the electric lights. To this, respondent makes answer that the doctrine of assumption of risk is based upon the maxim *Volenti non fit injuria;* and that where an express mandatory statute requires an employer to do a specific act—as to furnish a particular appliance, or to supply protective guards—the rule of assumption of risk ceases to be applicable; in short, that the omission of a duty imposed by statute or ordinance precludes the defense of assumption of risk. We need not be at pains to discuss these contentions, nor the limitations upon them declared by appellant to exist. It may here be conceded that defendant had violated the duty imposed upon it by the ordinance above quoted in its failure to provide this freight elevator with automatic closing gates. It may be conceded that the assumption of risk is not open as a defense. It may be conceded that the contention touching the contributory negligence of plaintiff was resolved by the jury in his favor; but one proposition stands out clearly and indisputably—that is, that the proximate cause of the accident was the negligence of a fellow-servant in the same general employment with plaintiff, and that such negligence bars plaintiff's right of recovery. The complaint itself, it will be remembered, pleads that while the plaintiff was obtaining these supplies another servant of the defendant caused the elevator to be moved from the basement

floor; the evidence of plaintiff himself fixes that servant as the confectioner, who was beyond question not only a fellow-servant, but under the general control of plaintiff. (*Mann* v. *O'Sullivan,* 126 Cal. 61, [77 Am. St. Rep. 149, 58 Pac. 375].) It was his negligence in failing to perform what the plaintiff describes as the "duty" of all employees in using the elevator, viz., to ring the bell and close the gate, that was the proximate cause of the accident; and but for this servant's act of negligence the injury could not have occurred. The case, then, is one where, under the provisions of section 1970 of the Civil Code a recovery is barred.

We need not be at pains to discuss at length the nature of such proximate and intervening cause. It has been repeatedly done. (*Vizelich* v. *Southern Pac. Co.,* 126 Cal. 589, [59 Pac. 129]; *Fogarty* v. *Southern Pac. Co.,* 151 Cal. 787, [91 Pac. 650]; *Schwartz* v. *California Gas & Elec. Co.,* 163 Cal. 398, 402, [125 Pac. 1044].) These and all other authorities hold that even where an appliance furnished by an employer is defective, the injured employee will not be entitled to recover if the injury was not the result of the defect, but was the result of the negligence of a coemployee. And where the negligence is predicated upon the failure to perform a duty commanded by statute or ordinance, the same rule applies. Says Thompson: "In all these cases it must appear that the violation of the ordinance was the proximate cause of the injuries received." (6 Thompson on Negligence, sec. 7868.) And says Cyc. (29 Cyc. 489): "The same rules are to be applied in determining the question whether an act is the proximate cause, whether such act is in violation of a statute or of some duty under general principles of law. In determining whether particular acts of negligence can be considered the proximate cause of injury, no distinction can properly be made between acts which constitute negligence because they are in conflict with statutory laws, and acts which are condemned as negligence under the general principles of law governing the conduct of men in relation to each other."

For the contrary doctrine respondent relies upon *Groves* v. *Wimborne,* 2 Q. B. 402 (1898). In that case the Factory Workshop Act imposed the mandatory duty upon the employer, for the protection of his employees, to fence and guard dangerous machinery. The arm of an employee was

caught in unprotected cogwheels, and he was injured. There was evidence to show that originally this machinery had been protected. How and when the guards had been removed was not disclosed; but it was shown that they had not been there during the six months of plaintiff's employment. There was *no question of intervening cause, or the negligence of a fellow-servant, proximately contributing to the injury.* The declaration of the Queen's Bench was the well established one, that where a duty is cast upon an employer he cannot escape responsibility for nonperformance by declaring that he had delegated it. Such a duty is either nondelegable, or, what is in legal effect the same thing, if delegated, the servant to whom the duty is delegated, becomes a vice-principal, and for his negligent act the master is responsible. The broad and obvious distinction between that case and the case at bar is that there was no immediate, intervening, proximate cause without which the injury would not have resulted.

A final contention of appellant is that it is in no way responsible, by reason of the fact that it is a charitable institution, and that an action against it such as this will not lie. Such was the doctrine of some of the earlier cases. We need not enter into an elaborate discussion of, the question. All of the authorities *pro* and *con* have been industriously collated and learnedly reviewed in *Basabo* v. *Salvation Army,* 35 R. I. 22, [42 L. R. A. (N. S.) 1144, 85 Atl. 120]. With the conclusion there reached we are in accord. That conclusion is that the true doctrine amounts to this; that where one accepts the benefit of a public or of a private charity he exempts by implied contract the benefactor from liability for the negligence of the servants in administering the charity, if the benefactor has used due care in the selection of those servants.

The judgment appealed from is reversed, and the cause remanded.

Melvin, J., and Lorigan, J. concurred.

Hearing in Bank denied.