[Civ. No. 1607.   First Appellate District.—July 3, 1915.]

GUISEPPE POLLONI et al., Appellants, v. C. T. RYLAND,
    Doing Business Under the Firm Name and Style of
    Sonoma Valley Company, Respondent.

NEGLIGENCE—ELECTROCUTION FROM FALLEN TRANSMISSION WIRE—INTER-
VENING CAUSE OF DEATH—ACTS OF THIRD PARTY.—An electric light
and power company is not liable in damages for the death of a per-
son from coming in contact with one of its transmission wires which
had fallen during a storm, on the theory of negligence in failing to
patrol and inspect the wires after the storm and before the turning
on of the current, where such death is shown to have been due directly
to the intervening act of a third party in cutting and insulating the
wire after it had fallen, and but for which intervention, the com-
pany's system of fuses, meters, and switches would have indicated to
it, upon the turning on of the current, the defective and dangerous
condition of the wire.

ID.—PROXIMATE CAUSE OF INJURY.—Before negligence can be held
to be actionable, it must be shown to be the direct and proxi-
mate cause of the injury complained of, that is to say, a causal con-
nection must be shown to exist between negligence and injury, and
the negligence complained of must proceed in an unbroken course
to the very point of inflicting the injury.  If the negligence claimed
to be the cause of the injury is shown to have been interrupted by
a separate, independent, intervening act of a third party, negligent
or otherwise, then the chain of causation is broken, and the negli-
gence complained of becomes a remote contingency which can no
longer be considered the proximate cause of the injury.

APPEAL from a judgment of the Superior Court of
Sonoma County and from an order denying a new trial.
Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

Edward A. Foley, James A. Bacigalupi, and Phil Ware, for
Appellants.

Rolfe L. Thompson, and Denson, Cooley & Denson, for
Respondent.

LENNON, P. J.—In this action the plaintiffs, as the heirs-
at-law of one Eda Polloni, deceased, sought to recover dam-
ages for her death, which, it was alleged, was proximately

caused by the negligence of the defendant. Judgment was entered for the defendant upon the verdict of a jury, from which and from an order denying a new trial the plaintiffs have appealed. The alleged insufficiency of the evidence to warrant and support the verdict and judgment is the principal point urged in support of the appeal.

Briefly stated, the facts of the case, as shown by the evidence adduced upon the trial, are these: The defendant, doing business under the name of the Sonoma Valley Company, was engaged in manufacturing electric light and power and supplying the same to the inhabitants of the town of Sonoma and adjacent surburban settlements in the county of Sonoma. One of the defendant's transmission lines extended from the town of Sonoma to the town of Glen Ellen. This line consisted of two heavy electric wires strung upon poles located on the westerly side of the county road and passed immediately in front of the premises of the deceased. Her home, however, stood back one hundred yards or more from the road, and at a point near by a stream known as "Hooper Creek" crossed the county road at right angles and intervened between the lands of the deceased and those of one Bacigalupi. On both the north and south banks of this creek there was placed a pole, which supported the transmission wires of the defendant. The entrance from the county road to the Bacigalupi premises was situated about one hundred and twenty feet north of the pole standing on the north bank of the creek, and these premises were inclosed on the east and south by a redwood picket fence. As the result of an unusually violent storm occurring and continuing during the night of May 15th and the early morning hours of May 16th, 1910, the transmission wires of the defendant were torn from their fastenings at various points, and at a point adjacent to the premises of the deceased and those of Bacigalupi dropped to the ground. The dropping of the wires at the point stated was caused by the branch of a tree falling upon and breaking the crossarm of the pole nearest to the Bacigalupi premises on the north bank of the creek. The breaking of the crossarm resulted in the dropping of the westerly transmission wire to the bed of the creek. The easterly transmission wire, however, remained suspended and intact from the powerhouse at Sonoma to the pole on the south bank of the creek, at which point one of the wires sagged to within two or three feet of

the ground. Both wires remained intact and "were well grounded" in the dirt up to and beyond the Baccigalupi gate, where they rose from the ground to the crossarm of a pole about one hundred feet north of this gate. On the morning after the storm one Cannobio, a stranger to the defendant, who was temporarily residing in the Baccigalupi home, dis-covered that the transmission wires were down, and being fearful that children who were playing near by would be ex-posed to injury, procured a knife and cut the wires. He then curled up the cut ends of the easterly wire and wrapped them around the pickets of a dry redwood fence which en-closed the Bacigalupi property. The other two ends he placed on the ground under a tree, where he supposed they would be out of the way. After being cut by Cannobio the west wires were intact at the pole nearest to the premises of the deceased on the south bank of the creek, and from there they extended down into the bed of the creek, one wire hid-den in the grass and the other resting a few feet away on the brush and tall grass.

While the transmission wires were in the condition just described the defendant turned on the electric current at the powerhouse without having made a previous personal inspec-tion of the damage done to his lines by the storm, with the result that a grass fire was ignited upon the premises of the deceased, and she in attempting to extinguish the fire with a wet sack came in contact with the wires hidden in the grass, and was electrocuted.

It was the contention of the defendant that notwithstanding that the transmission wires were down at the scene of the death of the deceased, no injury to her or to any one else would have resulted from the turning on of the electric cur-rent if it had not been for the intervening act of Cannobio in cutting and then insulating the ends of the easterly wire by wrapping them around the pickets of a dry redwood fence. In this behalf it was claimed by the defendant that if Can-nobio had not interfered with the wires the fuse at the power-house would have burned out upon the wires being tested by the turning on of the current, because, as was claimed, the detached wires after the storm and before being cut by Can-nobio were well grounded and would not upon the burning out of the fuse have carried or retained the current after the test was made, and, as a consequence, the grass fire would

not have started, and the deceased would not have been electrocuted. In this behalf it was also contended by the defendant that even if the wires had not been sufficiently grounded after the storm to cause the burning out of the fuse upon the turning on of the current, nevertheless if Cannobio had not interfered with them the operation of the meter at the powerhouse, and other devices employed as safety tests, would have absolutely warned the defendant of a defect somewhere in the system of transmission, and the consequent danger of continuing the current in the absence of a personal inspection and repair of the transmission wires wherever needed.

Upon this phase of the case special issues were submitted to the jury, which were formulated and answered as follows:

"(2) Question. Would Eda Pollini have received the fatal injury charged in the complaint had it not been for the intervening acts of Cannobio? Answer. No.

"(3) Question. If your answer to special issue No. 2 is 'No,' should the defendant necessarily have anticipated such acts as Cannobio's? Answer. No.

"(4) Question. If Cannobio had not interfered with the wires in the manner he did, would the defendant's electric fuse or meter have warned him of the dangerous condition of the wire when the electricity was turned on? Answer. Yes."

It is insisted that the evidence does not sustain these findings in this, that it was not shown that the transmission wires of the defendant were well grounded at the scene of the death of the deceased after they had fallen as the result of the storm, and further, that it was not shown that the devices employed at the powerhouse for testing the carrying capacity and general safe condition of the defendant's transmission wires would with any degree of certainty indicate a defective and dangerous condition.

The uncontradicted testimony of Cannobio and one other witness is to the effect that the wires were well grounded after the storm and before they were cut at the scene of the killing of the deceased, and also at a point one mile and a half beyond. With this evidence as a basis expert witnesses testified that if Cannobio had not interfered with the position and condition of the wires as they fell during the storm, the system of meters, fuses, and switches employed by the defendant at the powerhouse would, upon the turning on of the current, have indicated with absolute certainty the existence of a

defective and dangerous condition of the defendant's trans-
mission wires; the fuses would have burned out and the wires
would not have carried the current; there would have been
no fire and the deceased would not have been electrocuted.
This evidence was sufficient to support the findings of the
jury that the deceased would not have suffered any injury
if it had not been for the intervening act of Cannobio. The
finding of the jury in this behalf was in effect a finding that
the act of Cannobio in cutting and insulating the transmission
wires of the defendant after they had fallen as the result of
the storm, was the proximate cause of the death of the de-
ceased. This finding being supported by sufficient evidence,
the verdict and judgment must stand, because of the well-
settled doctrine that before negligence can be held to be
actionable it must be shown to be the direct and proximate
cause of the injury complained of, that is to say, a causal
connection must be shown to exist between negligence and
injury, and the negligence complained of must proceed in
an unbroken course to the very point of inflicting the injury.
If the negligence claimed to be the cause of the injury is
shown to have been interrupted by a separate, independent,
intervening act of a third party, negligent or otherwise, then
the chain of causation is broken, and the negligence com-
plained of becomes a remote contingency which can no longer
be considered the proximate cause of the injury. (*Schwartz
v. California Gas etc. Co.*, 163 Cal. 398, [125 Pac. 1044].)

In the present case the jury having found upon sufficient
evidence that the death of the deceased was due directly to
the intervening act of Cannobio rather than the failure of the
defendant to patrol and inspect his transmission wires after
the storm and before turning on the current, such failure,
conceding it to be negligence, was too remote a cause of the
death of the deceased to be actionable, for, as was said in the
case of *Missouri K. & T. Ry. Co.* v, *Byrne,* 100 Fed. 359,
[40 C. C. A. 402] : "An injury that is not the natural conse-
quence of negligence and which would not have resulted
from it but for the interposition of some new, independent
cause that could not have been anticipated, is not actionable."
The finding of the jury upon this phase of the case is alone
sufficient to support the judgment; it will not, therefore, be
necessary to discuss and decide the question as to whether or

not the evidence justified the further finding that the deceased was guilty of contributory negligence.

For the same reason we do not feel called upon to review and determine the correctness of the trial court's charge to the jury upon the law of contributory negligence.

The judgment and order appealed from are affirmed.

Richards, J., and Kerrigan, J., concurred.