[Civ. No. 7409.   Third Dist.   Sept. 3, 1948.]

THOMAS BENARD, Plaintiff and Appellant, v. C. E. VOR-
LANDER et al., Defendants; PACIFIC GAS AND
ELECTRIC COMPANY (a Corporation), Defendant
and Appellant.

Robert G. Partridge, Henry Sanford and Leo M. Cook, Jr., for Plaintiff and Appellant.

Robert H. Gerdes and W. R. Dunn for Defendant and Appellant.

ADAMS, P. J.—Plaintiff brought this action to recover damages for personal injuries, naming as defendants C. E. Vorlander, an individual doing business as Reliable Elevator Works, Pacific Gas and Electric Company, and certain fictitious persons. He alleged in his first amended complaint that on July 20, 1943, he was employed by MacDonald & Kahn as a steel worker, and was working upon a building being constructed by them for the United States government; that his injuries were sustained by reason of the negligence of said defendants who owned, operated and maintained a power line, and that they carelessly and negligently maintained same in a dangerous, defective and unsafe condition, and as a proximate result thereof a steel rod which plaintiff was moving during his work on said building came into contact with defendants' uninsulated high wires carrying 11,000 volts of electricity.

Defendant Pacific Gas and Electric Company filed an answer in which it denied negligence on its part, alleged that plaintiff was guilty of contributory negligence, and that he assumed the risk of injury.

The action came to trial before a jury. At the close of plaintiff's case a motion for a nonsuit made by defendant Vorlander was granted and plaintiff dismissed his action as to the fictitious defendants. At the conclusion of the testimony plaintiff amended his complaint to provide that at the time and place of the accident he was necessarily moving reinforcing steel rods, and that it became reasonably necessary for him and other workmen to move one of such rods from the north end of the form of the building under construction to the easterly wall thereof, and, in so doing, to swing said rod outward from the northerly wall and toward the wires maintained by defendants; that defendants and each of them well knew, or in the exercise of ordinary care should have known, of the necessary and reasonable manipulation and movement of said rod by said plaintiff and the other workmen in conjunction with him, in the performance of their duties on and upon said building, and knew, or in the exercise of ordinary care should have known, that said rod would be used, handled and moved in the manner in which said rod was being used, handled and moved by said plaintiff; that said defendants know, or by the exercise of ordinary care should have known, that in the necessary and reasonable use and movement of said rod it could reasonably be expected to come in close proximity to or into contact with said wires and thereby allow current to pass from said wire to the body of the plaintiff; that at said time and place, while plaintiff, in conjunction with other workers, was moving and controlling said rod as hereinbefore described, it was inadvertently brought into contact with one of said wires by the actions of plaintiff and of his fellow workmen and while plaintiff was unmindful of the current in said wires; and that by reason of·the negligence and carelessness of defendants and the proximity of the wires to the building and the scaffolding attached thereto, and the careless and negligent manner in which defendant maintained, controlled and possessed said power line, the rod became charged with electricity which was transmitted to plaintiff, inflicting the injuries of which he complained.

It being stipulated that the new allegations in such amended complaint should be deemed denied, defendant Pacific Gas and Electric Company moved for a directed verdict in its favor, on the ground that the evidence showed no breach of duty on its part amounting to negligence, and that, on the contrary, it showed that the sole cause of the accident was negligence on the part of plaintiff. The motion was denied and the cause

submitted to the jury which returned a verdict in plaintiff's favor for $17,500. Judgment thereon was entered November 22, 1946.

Defendant then moved for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. Such judgment was at that time denied, the court stating that it preferred to consider defendant's argument in that behalf in connection with the motion for a new trial.

Defendant thereafter filed its notice of intention to move for a new trial on the grounds set forth in subdivision 1, 5, 6 and 7 of section 657 of the Code of Civil Procedure, and after a hearing the court filed an opinion and entered judgment in favor of defendant, notwithstanding the verdict, on the ground that the evidence was insufficient to support the verdict. Appeal was taken from such judgment by plaintiff, and defendant appealed from the prior judgment entered November 22, 1946.

Two questions only are presented by said appeals, to wit, whether there is sufficient evidence to show negligence on the part of defendant Pacific Gas and Electric Company, and, if there is, whether the evidence shows that plaintiff was guilty of contributory negligence as matter of law.

The evidence shows that the power line through which defendant was transmitting electricity at the time of the accident had been constructed by defendant Vorlander for the United States government, and that the poles, wires, transformers, etc., had all been placed in accordance with government specifications. Defendant Pacific Gas and Electric Company, at the request of the United States, had then energized the lines by connecting them with its transmission line outside the government's premises. The terms of the agreement between those parties do not appear. Construction of the building upon which plaintiff was working at the time of the accident was begun after the line had been fully constructed and energized. It was placed in such a position that the north end of same was approximately parallel to one of the pole lines which was 38 feet from the ground and about 9½ feet, horizontally, from the wall where the accident occurred. There was at that time a scaffolding along the north outside wall of the building, the outer edge of which scaffolding was about 3½ feet from the nearest of three wires strung on the pole line. When the scaffolding was erected does not appear, but it was very shortly before the accident. The wires were uninsulated and carried 11,000 volts. However, they carried five ''High Voltage'' signs near the building, which were plainly visible.

As regards the alleged negligence of defendant Pacific Gas and Electric Company, it cannot be said to have been negligent in the *construction* of said power line as it neither constructed nor owned it; nor does it appear that it had control over it or was obligated to *maintain* it (see *Ray* v. *Pacific Gas & Elec. Co.*, 3 Cal.App.2d 329, 337 [39 P.2d 812]; *Hill* v. *Pacific Gas & Elec. Co.*, 22 Cal.App. 788, 790-792 [136 P. 492]); and it is not contended that the line was in any respect in disrepair. Presumably at the time of its construction it was not considered a menace, and if it became such it was because of the subsequent construction of the building too close to it; and defendant cannot be said to have been negligent unless, knowing that the building was being constructed less than 10 feet distant from the wires, and knowing of the existence of the staging thereon and the use of long steel rods in its construction, it was its duty, under the conditions existing, to anticipate with reason that workmen might protrude a steel rod therefrom in the manner in which it was done by plaintiff and thus bring it into contact with such wires, and, so anticipating, to remove or insulate said wires, or to discontinue furnishing electric current through them on failure of the owners of the line to remove or insulate them.

It is said in *Polk* v. *City of Los Angeles*, 26 Cal.2d 519, 525 [159 P.2d 931], that the standard of care imposed upon those maintaining wires carrying electricity is "to exercise the care that a person of ordinary prudence would exercise under the circumstances. Among the circumstances are the well known dangerous character of electricity and the inherent risk of injury to persons or property if it escapes. Hence, the care must be commensurate with and proportionate to that danger. . . . Specific application of that standard requires that wires carrying electricity must be carefully and properly insulated *by those maintaining them* at all places where there is a *reasonable probability* of injury to persons or property therefrom. . . . Upon *those controlling such instrumentality and force* is imposed the duty of reasonable and prompt inspection of the wires and appliances and to be diligent therein. . . . And, in the places where there is a *probability* of injury, they must not only make the wires safe by proper insulation, but as stated in *Dow* v. *Sunset Tel. & Tel. Co.*, 157 Cal. 182, 186 [106 P. 587], 'keep them so by vigilant oversight and repair.'" (Italics added.)

However, as we have pointed out, defendant Pacific Gas and Electric Company was not the owner of the pole line or the

wires with which the rod handled by plaintiff came in contact. The power line belonged to the government, and there is nothing in the record before us to show that, even if defendant could reasonably have anticipated the action of plaintiff which resulted in the injury which befell him, it had the authority to remove the pole line or that it, rather than the owner, had the obligation to insulate the wires. It is not contended that it was ever requested to move the wires, to insulate them or to turn off the power. In this respect this case differs from all of those relied upon by the appealing plaintiff.

In *McCormick* v. *Great Western Power Co.*, 214 Cal. 658 [8 P.2d 145, 81 A.L.R. 678], which he quotes and relies upon, while the court said that persons controlling so dangerous and subtle an agency as electricity should use a high degree of care, the duty which it said was imposed was, either to insulate the wires or so locate them that they would be, comparatively speaking, harmless. We are cited to no case in which the duty has been imposed upon a company which is merely selling electric power which is being transmitted through facilities owned and maintained by others upon their own property, either to remove the lines, to insulate them, or, in the absence of a request to do so, to shut off its power because the owner of such property has commenced the construction of a building so close to the lines through which power is being transmitted as to endanger workmen engaged in such work.

The evidence shows that plaintiff had worked about three weeks upon the building under construction, which was being built of concrete, with walls about 10 inches thick, steel rods being put in the forms to reinforce them. At the time of the accident plaintiff, a Mr. Weaver, and a foreman named Saunders were working on the north wall, along the outside, as well as the inside of which there was scaffolding. Saunders had instructed the removal to the east wall of a steel rod which had been misplaced in the form along the north wall; and the three men, in carrying out this operation, first lifted the rod from the form to the top of the north wall, plaintiff and Saunders standing on the outer scaffold and Weaver on the inside. The rod was from 32 to 34 feet long, and had a hook on one end, which hook end they desired to keep at the northeast corner. Plaintiff testified that he did not remember the movement of the rod which followed after same was raised to a position along the north wall; but Weaver's testimony shows that after it was so raised, and they were in the process

of turning it, the hook end of it was slid out over the outer staging near the northeast corner of the structure, so that it extended 12 or 15 feet from the outer edge of the outside scaffolding. Weaver, carrying the other end, then began to walk along the staging inside the east wall, there being no outside staging there. He had proceeded but a short distance when plaintiff started to step over the top of the form to the inside staging, and the extended end of the rod came into contact with the wires. Apparently he, himself, had contacted steel rods the ends of which protruded upward in the form, thus grounding the current.

Respondent says in his opening brief that the fact that defendant was maintaining uninsulated wires carrying 11,000 volts of electricity approximately 3 to 3½ feet from the scaffolding where the men were working and had a right to be, constituted substantial evidence that defendant owed plaintiff a duty to use due care toward him, which duty required defendant to see that the wires were ''properly placed with reference to plaintiff's safety, and either insulated or otherwise guarded, or placed beyond the danger line of contact with him.'' But the evidence does not show that defendant was aware of the nearness of the scaffolding, or, in fact, of its existence; nor does it appear that it had been erected for a sufficient time to charge defendant with such knowledge.

It cannot be said that the fact that the wires were within 6 feet of the outer edge of the staging on the north end of the building was the proximate or any cause of the accident, for the evidence shows that the steel rod which was being handled by plaintiff and his fellow workmen was extended at least 16 feet from the wall; and if the power line had been at a greater distance from the staging, which was approximately 6 feet wide, the rod when extended would still have come in contact with the wire. Any negligence on the part of defendant Pacific Gas and Electric Company, then, must be premised upon failure to insulate the wire. ■ Appellant alleged in his complaint that defendant knew or in the exercise of ordinary care should have known that workmen, including plaintiff, would use, handle, and move an instrument or instruments such as the rod being used by plaintiff at the time and place of the accident, and that said instrument or instruments would be used, handled, and moved in the manner in which said rod was being used, handled, and moved by said plaintiff at said time and place, and that as a result of said use, said instrument or instruments could reasonably be expected to

come into contact with said wires, thereby allowing current to pass from the said wires to the body of the workmen using said instruments. But plaintiff apparently recognized the insufficiency of this allegation, for he amended his complaint to allege that he inadvertently moved the steel rod so that it contacted the wire while he was unmindful of the current therein. We find nothing in the evidence here to show that defendant either knew or in the exercise of ordinary care should have known that workmen would "inadvertently" or otherwise extend steel rods from such structure 16 or 17 feet and so bring them into contact with the wires. Orders 7-5050, 7-5050-a and 95 of the Industrial Accident Commission which were introduced in evidence, require that no person, firm or corporation shall require or permit any employee to perform any function in proximity to high-voltage lines, etc., unless and until danger from accidental contact with said high voltage lines has been effectively guarded against in the manner therein prescribed; and a 6-foot clearance from such lines is prescribed. But defendant was not the employer of plaintiff and owed him no duty under such orders. Section 385 of the Penal Code, though enacted in 1947 and after the occurrence of this accident, makes it a misdemeanor for any employee to move any tools, equipment, material, etc., within 6 feet of a high voltage overhead structure, and this enactment can be said to constitute a legislative recognition of a standard of conduct on the part of an employee as well as of an employer; and defendant may well be said to have safely assumed that plaintiff's employers would obey the aforesaid orders, and that plaintiff likewise would exercise due care not to bring equipment with which he was working within dangerous distance of such wires.

But whether or not defendant was chargeable with negligence under the circumstances of this case, it seems certain that plaintiff himself, and his fellow workers, were guilty of contributory negligence which bars his recovery.

What the court said in *Sweatman* v. *Los Angeles Gas & Electric Corp.*, 101 Cal.App. 318 [281 P. 677], is apposite to the facts in this case. There a workman on the fifth floor of a building under construction extended a steel rod through a window, bringing it into contact with an uninsulated electric wire maintained by defendant some 7 feet from the building. A demurrer to the complaint was sustained, and on appeal the court said, at page 322: "The law does not require one who maintains even so dangerous an instrumentality as a

highly charged electric wire to anticipate, at his peril, every possible fortuitous circumstance under which some person might make a contact with such wire, resulting in injury or even death. Reasonable care, not insurance against every possible accident, is the measure of his liability. . . . We do not think that the respondent here can be said to have had reasonable ground to suspect that someone would be apt to make contact with its wire by means of a metal bar extended from a fifth-story window of a neighboring building.'' It also said, pages 326-327 : ''It cannot be said that the death of Sweatman was the natural consequence of the position of respondent's wire with respect either to the surface of the street or the building under process of erection, or to its lack of insulation. Obviously, he could not have touched the wire with his hand while standing on the fifth floor of the building. In other words, the position of the wire rendered it safe in its uninsulated condition under all ordinary circumstances. It was only when decedent interposed a new, independent cause, by swinging out from the wall of the building a metal rod which he was handling therein or drawing in through the window, that he was able to make contact with defendant's electric wire. The interposition of this new and independent cause could not have been anticipated by defendant. It does not occur, in the natural order of things, that workmen engaged in building operations in cities, adjacent to electric wires maintained in the streets by public service companies, are electrocuted by coming in contact therewith. The complaint set forth that it is the usual thing for such building operations to be conducted in Los Angeles in like proximity to similarly charged wires in the streets, but there is no allegation that any similar injury has ever resulted therefrom and therefore no such injury was reasonably to be anticipated. As said in *Oakland Bank of Savings* v. *Murfey*, 68 Cal. 455 [9 P. 843, 847] : 'If the wrong and resulting damages are not known by common experience to be usually and naturally in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and the damage are not sufficiently conjoined or concatenated, as cause and effect, to support the action.' And as stated in *Polloni* v. *Ryland*, 28 Cal.App. 51 [151 P. 296, 298] : 'An injury that is not the natural consequence of negligence, which could not have resulted from it but for the interposition of some new, independent cause that could not have been anticipated, is not actionable.' ''

In *Dresser* v. *Southern California Edison Co., Ltd.*, 28 Cal. App.2d 510 [82 P.2d 965], plaintiff and another workman were engaged in pulling a rod some 20 feet long from a well situated near a pump house to which ran an uninsulated high voltage wire belonging to defendant, about 5 feet from the center of the well and between 19 and 23 feet above the surface of the ground. The rod was extended to a height above the level of the wire, and when raised vibrated sufficiently to come into contact with the charged wires, with the result that plaintiff was severely injured. Evidence in the case showed that posted upon the pump house and a near-by pole were safety circulars issued by the railroad commission which warned of the high voltage wires, said circulars being printed in conspicuous type and easily visible to anyone entering or passing the pump house. Plaintiff testified that he saw the wires when he was raising the rod and supposed they had ''juice'' in them but did not know it. The court said, page 516: ''Plaintiff was in no danger at all until he raised the rod to the height of the wires. He knew the wires were somewhere above him. He did not ascertain their exact location. He did not know if the wires were insulated. He could have determined this fact by simply looking at them. He did not look at what was in plain sight. This unfortunate young man simply 'took a chance' and was terribly injured.'' It was argued by plaintiff that the wires should have been at least 25 feet from the ground and that they should have been insulated, and that had they been so placed and conditioned the accident would not have happened, and that such acts of negligence were the sole and proximate cause of the accident; but the court said, page 516: ''It is equally true that if plaintiff had not raised the limber rod into close proximity to the wires the accident would not have happened. We are not here particularly concerned with the negligence of defendant and have assumed its negligence. It is too well settled to need citation of authority that contributory negligence of a plaintiff bars his recovery even though a defendant is also negligent.''

In *Hauser* v. *Pacific Gas & Elec. Co.*, 133 Cal.App. 222, 226 [23 P.2d 1068], the Sweatman case was cited, and this court quoted from 45 Corpus Juris, page 931, as follows: ''A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote

cause and the injury a distinct, successive, unrelated, and efficient cause of the injury, even though such injury would not have happened but for such condition or occasion. If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause. And if an independent negligent act or defective condition sets into operation the circumstances which result in injury because of the prior effective condition, such subsequent act or condition is the proximate cause.''

In *Andrews* v. *Valley Ice Co.*, 167 Cal. 11, 21 [138 P. 699], the court, in reversing a judgment for plaintiff who had been electrocuted by bringing a ruler in his hand in contact with an electric wire, applied the well-known rule that ''one who places himself in the way of an obvious and well understood peril is guilty of contributory negligence which bars recovery for his injury or death,'' citing numerous cases.

In *Stackpole* v. *Pacific Gas & Electric Co.*, 181 Cal. 700 [186 P. 354], the court held that the proximate cause of the death of a workman caused by contact with a high-voltage wire was the negligence of the employer of said workman in moving a pile-driver upon which the deceased was working before defendant power company had complied with a request to set back its wires in order to permit the movement of the pile-driver. The court said, page 705: ''It is perfectly apparent from the foregoing facts that the proximate cause of the decedent's death was not any negligence on the part of the defendant, but was the negligence of Price in moving in the pile-driver before the wires had been set back so as to avoid danger. The fact that the defendant delayed setting back the wires, although it had promised to do so, or even though we assume it was its duty to do so, is wholly immaterial. The utmost responsibility which would attach to the defendant for such delay would be to compensate Price for the consequent delay to his work. But it was not the delay in setting back the wires that killed the decedent, but the moving in of the pile-driver before they were set back and were safely out of the way.''

In *Stasulat* v. *Pacific Gas & Electric Co.*, 8 Cal.2d 631 [67 P.2d 678], where there was evidence that defendant's wires were sagging and had been in such condition for a sufficient length of time to charge defendant with knowledge of their defective condition and thus render it liable for the death of a workman who came in contact therewith, the court said that nevertheless its negligence was not the proximate cause

of the accident where the chain of causation in the electric company's negligence was broken by an efficient intervening cause which did not follow as a natural consequence of the negligence of the company. It said, pages 637-638:

"The rules for determining whether the independent force which acts upon the situation created by the original negligence is such an intervening cause that the original negligence is no longer a proximate cause of the injury are set forth in sections 442 to 453 of the Restatement of the Law of Torts and, as so reframed, lead to the conclusion that the appellant is not liable in the present case, even though it negligently allowed its wires to sag, if the realizable likelihood of the second negligent act is not one of the factors contributing to the negligent character of the first act; if a reasonable man, knowing the situation created by the first act, would regard it as highly extraordinary that the intervening act should have been done, or the act, although not an extraordinary response to the situation created by the original negligence, is done in an extraordinarily negligent manner. (See sec. 447 of the Restatement and comment thereon.) Our own cases support these propositions by the statement of the more general rule that, although it is not necessary to preserve the chain of causation from the original negligence that the precise nature of the second negligent act should reasonably have been anticipated, it is necessary that some such negligence should have been anticipated as reasonably likely to follow as a natural and ordinary consequence of the situation created by the original negligent act. (*Sawyer* v. *Southern Cal. Gas Co.*, 206 Cal. 366 [274 P. 544]; *Schwartz* v. *California etc. Gas Co.*, 163 Cal. 398 [125 P. 1044]; *Hale* v. *Pacific Tel. & Tel. Co.*, 42 Cal.App. 55 [183 P. 280]; *Polloni* v. *Ryland*, 28 Cal.App. 51 [151 P. 296].) Although, as a general rule, the question whether the original negligence is a proximate cause of the injury is one of fact for the jury (*Lacy* v. *Pacific G. & E. Co.*, 220 Cal 97, 101 [29 P.2d 781]), it must be said here that, as a matter of law, the issue of proximate cause was not proved. (Restatement of the Law of Torts, sec. 453.) There was no evidence upon which the jury could reasonably conclude that the lifting of the wires a foot and a half over the top of the pole and the crowding of the four wires into the 'J'-hook with such force as to break their insulation was an act which should reasonably have been foreseen and anticipated as a result of the sagged condition of the wires, or even that there was more than a remote and slight

probability of the occurrence of any positive act which would bring the wires in contact with the telephone pole or its equipment, much less destroy the insulation.''

Also see *Hayden* v. *Paramount Productions, Inc.*, 33 Cal. App.2d 287, 292 [91 P.2d 231], citing *Hauser* v. *Pacific Gas & Electric Co.*, *Stackpole* v. *Pacific Gas & Electric Co.*, and *Sweatman* v. *Los Angeles Gas & Electric Corp.*, *supra*.

Appellant relies upon the decision of this court in *Lozano* v. *Pacific Gas & Electric Co.*, 70 Cal.App.2d 415 [161 P.2d 74], but the facts in that case are essentially different. In the first place, defendant company there owned, maintained and operated the power line, it having been granted a right-of-way over the shipyard which was being constructed by Hickenbotham Bros. with whom defendant entered into a contract to furnish electric energy ''for welding crane power and lights for steel shipbuilding.'' Furthermore, the record disclosed that both before and after the installation of the power line defendant's agents had notice or knowledge of the fact that large portable pieces of equipment such as mobile cranes (the contact of one of which with the wires brought death to workmen) and floodlights were to be used, and that defendants later saw same in use; also that defendant had been negligent in not making recent inspections of its line. It was held, accordingly, that the evidence established negligence on the part of defendant.

Appellant also relies upon *McCormick* v. *Great Western Power Co.*, 214 Cal. 658 [8 P.2d 145, 81 A.L.R. 678], but in that case also the defendant owned, maintained and operated the power line, and the evidence showed that plaintiffs had gone to work on the job for the first time on the morning of the accident, that they had not been forewarned and did not know of the presence of the high voltage wires, and that such lines were not visible from the fifth floor where they were working, without going to the edge of the building and looking over.

Here it is admitted that plaintiff had knowledge of the existence of the power line, that it might be carrying high voltage electricity, and that it was marked ''High Voltage''; that he had noticed that the wires were uninsulated, and knew that if he came too close to them he would be hit by the ''juice'' and that a steel rod was a conductor of electricity. He alleged in his complaint that defendant knew, or in the exercise of ordinary care should have known, that plaintiff would move a rod in the manner in which this one was being moved, and that as a result thereof said rod *could reasonably be expected*

*to come into contact with said wires.* If this be true, then plaintiff, in the exercise of ordinary care, should have known the same thing; and it is apparent that he recognized that fact when he amended his complaint to allege that the rod was "inadvertently" brought into contact with the wire and while he was "unmindful" of the current in said wire. But the evidence does not show either of these things; and the trial court said in the opinion which it filed that, on the contrary, the uncontradicted evidence showed that plaintiff "knowingly, heedlessly, carelessly, recklessly and unnecessarily exposed himself to a notoriously open and obvious danger," and that by reason thereof he was guilty of contributory negligence as matter of law, which was a proximate cause of the accident. We agree with this conclusion.

The judgment notwithstanding the verdict is affirmed.

Thompson, J., and Peek, J., concurred.

Plaintiff and appellant's petition for a hearing by the Supreme Court was denied October 28, 1948. Carter, J., voted for a hearing.