[Civ. No. 18803. First Dist., Div. Two. Nov. 17, 1960.]

RONALD K. PERRINE, Appellant, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Respondent.

444

Harry Gonick and Harold A. Galloway for Appellant.

Richard H. Peterson, R. A. Raftery, Noel Kelly and David R. Fuller for Respondent.

SHOEMAKER, J.—This is an appeal by the plaintiff, Ronald Perrine, from a judgment rendered in favor of defendant, Pacific Gas and Electric Company (hereinafter referred to as P.G. & E.), under the provisions of Code of Civil Procedure, section 630.

Viewing the evidence in the light most favorable to plaintiff, the facts are:

Plaintiff, a bricklayer, was employed by a subcontractor in the construction of a warehouse by defendants, Underground Construction Company and F. P. Lathrop Construction Company, as general contractors, for defendant California Packing Corporation (hereinafter called Cal Pak), in Oakland, California. Defendant P.G. & E. owned and operated an overhead 12,000-volt electric line extending along the street bordering the south wall of the building. At the time of the accident, plaintiff, standing on a steel beam, was handling

a 30-foot length of ⅝-inch steel reinforcing rod which was to be placed in the south wall. The wall had reached a height of 28 feet from ground level inside the building; the nearest 12,000-volt line was a horizontal distance of about 7 feet, 4 inches from this wall; the distance on a vertical slant between this line and plaintiff's position at the point of the accident was about 10 feet, 3 inches. The power lines complied with the specifications of Public Utilities Commission General Order 95 concerning construction, maintenance and operation of high voltage lines and the cross arms carrying the lines were marked with the required standard high-voltage signs. Expert testimony without contradiction established that the line met the requirements of good engineering practice for that class of line in such location and that it conformed to the best accepted standards of the electrical industry throughout California and the nation. Several rods were standing on end, leaning against the beam; plaintiff grasped one and raised it, hand over hand. While so doing, he faced away from the wall and the wire. When he reached the point where he was holding the approximate middle of the rod, he started to turn with it. The rod came into contact with the nearest high-voltage wire and plaintiff was badly burned.

Prior to the accident, plaintiff had worked on the south wall about a month and had handled about 50 similar rods in its erection. He followed the same procedure in handling the rods; he was aware of the wires but not of their high voltage; he had not observed the high-voltage signs nor that the wires were not insulated. Fellow workers testified to the same effect. Plaintiff's foreman had not warned him of the lines or of their inherent danger; however, he said that he avoided wires of all types while on a job regardless of voltage as a matter of safety. The wires admittedly were in plain sight on a level with plaintiff's eyes at the time of the accident, had he looked in that direction, and to contact the wire as it did the rod had to be projected away from the building and over the sidewalk some 13 feet.

Prior to the construction of the south wall, P.G. & E. had notice that the top of the wall upon completion would be within four feet of its northerly high voltage line as it then stood. P.G. & E. thereupon wrote Cal Pak that it would be necessary to relocate the line so as to comply with Public Utilities Commission General Order 95 which specifies the minimum distances between high voltage lines and structures.

P.G. & E. and Cal Pak carried on written negotiations regarding their respective burdens of the expense of moving the line, and at this time the construction plans of the south wall were made available to P.G. & E.; with this information P.G. & E. completed a sketch of the intended construction, specified the work which should be done in moving the high voltage line, and thereupon the parties signed a written contract for the job on August 25, 1954. Pursuant thereto, P.G. & E. relocated the power lines, completing the work on or about August 30, 1954.

All parties rested their cases on September 4, 1958. Each of the defendants then made motions for directed verdicts in their favor. These motions were all denied without prejudice. After a three-day recess the appellant on September 8, 1958, and before argument to the jury moved to reopen his case to present expert testimony, which he stated he discovered since the court was recessed, to the effect that the wires did not meet P.G. & E.'s own standards since its other wire in the area was weatherproofed, that weatherproofing would have probably protected the appellant, and that such bare wire did not meet general engineering standards in the area. The learned trial judge heard appellant's arguments as to this proposed testimony outside the presence of the jury, even called in the proposed expert, and then denied the motion. After submission of the case to the jury, they were unable to agree on all parts of their verdict and were discharged. Thereafter, P.G. & E. proceeded under section 630, Code of Civil Procedure, the court granted its motion and entered judgment in its favor. The appellant moved for a new trial alleging that (1) the court had erred in refusing to allow him to reopen his case, (2) in granting P.G. & E.'s motion for directed verdict, and (3) that plaintiff was now possessed of newly discovered evidence which could not have been found with reasonable diligence before trial. This motion was denied.

The appellant contends that there was substantial evidence of negligence to support a verdict in his favor.

One theory urged is that there was a breach of the duty of care as to appellant imposed by the contract entered into by P.G. & E. and Cal Pak for the moving of the wires. ██ A duty of care may arise by virtue of a contract, and run to a person who is not a party to the contract, but for whose benefit it is made. (*Eads* v. *Marks* (1952), 39 Cal.2d 807, 811 [249 P.2d 257].) ██ But in order to maintain an action as a third party beneficiary of a contract there must have

been a clearly manifested intent to have the benefit inure to the third party. Civil Code, section 1559, declares the contract must be made *expressly* for the benefit of the third party; a third party may not enforce a contract which is merely of incidental benefit to him. (*Wilson* v. *Shea* (1916), 29 Cal.App. 788, 790 [157 P. 543]; *Holmes* v. *Columbia Pictures Corp.* (1953), 109 F.Supp. 327, 329.) ■ The contract relied on by appellant merely provided that P.G. & E. would move the power line in question so as to provide a legal clearance from the building being built by Cal Pak, the contracting parties sharing the expense of $1,500. Preliminary negotiations indicate the contracting parties were concerned solely with the expense of relocation and providing legal clearance. Since no intent was manifested by the contracting parties to benefit appellant, any benefit merely is incidental; therefore he may not claim any duty was owed him under the contract.

The appellant cites General Order 95 of the Public Utilities Commission and contends that respondent violated several duties of care imposed by that order. The record shows the lines were relocated to comply with rule 37 and did thereafter provide the required 6-foot horizontal clearance from the building. ■ Appellant next urges rule 31.1 which places upon the owners and employees of electrical systems the duty to exercise due care at all times to reduce to a minimum the hazard of accidental injury to others due to the presence· of overhead wires. However, in *Lewis* v. *Pacific Gas & Elec. Co.* (1949), 95 Cal.App.2d 60, 63 [212 P.2d 243], it was held that this rule is merely a statement of the common-law rule of due care and thus cannot be the basis of negligence *per se.* The appellant then turns to rule 13, which provides that the Public Utilities Commission Rules are not all-inclusive and indicates construction should be according to good practice for local conditions. This obviously refers us to general rules of negligence dealing with electrical power lines and again cannot be made the basis of negligence *per se,* and the rule of the Lewis case applies.

■ Continuing with like argument, appellant asserts that definite negligence is established by an alleged violation of Electrical Safety Orders, section 2603. This section provides that no firm, corporation, or agent thereof shall allow or require any *employee* to perform any function in proximity of high-voltage lines unless and until danger from accidental contact with the lines has been effectively guarded against,

and a 6-foot clearance from such lines is prescribed. This position has no merit, for in *Benard* v. *Vorlander* (1948), 87 Cal. App.2d 436, 443 [197 P.2d 42], dealing with orders 7-5050 and 7-5050-a and 95 of the Industrial Accident Commission (the orders which are now contained in section 2603), it was held that such sections applied only to the employer of the plaintiff. Since P.G. & E. was not the employer of appellant, this section does not establish a duty on its part toward him. Appellant cites *Hyde* v. *Russell & Russell, Inc.* (1959), 176 Cal.App.2d 578 [1 Cal.Rptr. 631], and *Williams* v. *Pacific Gas & Elec. Co.* (1960), 181 Cal.App.2d 691, 708 [5 Cal.Rptr. 585] as governing authority. These cases are not applicable, for in the former the lessor of a scaffold was held liable for injuries suffered due to a defective safety rail since the lessor had furnished a defective scaffold and the control thus exercised made him responsible for compliance with the safety rule invoked. In the latter case, the injured party was working on a pole, the property of defendant P.G. & E., and again the court applied the rule that control as exercised by the owner of real property established its liability. Here we have a complete absence of control and custody by P.G. & E. over the workmen, tools, materials, or place involved in the place of construction.

We are mindful that even though P. G. & E. complied with all applicable governmental safety regulations, this would not serve to absolve it from a charge of negligence, but just negligence *per se,* for one may act in strict conformity with the terms of such enactments and yet not exercise the amount of care which is required under the circumstances. (*Lozano* v. *Pacific Gas & Elec. Co.* (1945), 70 Cal.App.2d 415, 424 [161 P.2d 74]; *Nevis* v. *Pacific Gas & Electric Co.* (1954), 43 Cal.2d 626, 630 [275 P.2d 761].) ■ To constitute actionable negligence three elements must occur: (1) the legal duty to use care; (2) a breach of that duty; and (3) proximate causation between the breach and the injury. (*Lewis* v. *Pacific Gas & Elec. Co., supra,* at p. 62; *Lozano* v. *Pacific Gas & Elec. Co., supra,* at p. 420.) ■ P. G. & E. as an electric company using highly charged wires owed a duty to anyone who, in the exercise of a lawful occupation in a place where he had a legal right to be, was likely to come into contact with deadly wires. *McCormick* v. *Great Western Power Co.* (1932), 214 Cal. 658, 662 [8 P.2d 145, 81 A.L.R. 678], would appear to support appellant's position. However, it differs from this one in that there the wires were concealed from view at the level of work, the plaintiff was

on the job for the first time the day of the accident, the utility evidenced a knowledge of the dangers inherent in the construction taking place, the necessity that the rods be projected close to the wire for purposes of that job, and that similar accidents, known to the power company, had taken place in the construction area.

Even one who maintains so dangerous an instrumentality as a high power line need not anticipate at his peril every possible fortuitous circumstance under which someone may make contact with the wires causing injury; care, commensurate with and proportionate to reasonably foreseeable consequences, not insurance against every possible accident, is the measure of liability. (*Sweatman* v. *Los Angeles Gas & Elec. Corp.* (1929), 101 Cal.App. 318, 322 [281 P. 677]; *Lewis* v. *Pacific Gas & Elec. Co., supra* at p. 62.)

In the present case the wires were plainly visible, at the legally prescribed distance, and marked with warning signs which were visible though not seen. The record shows that appellant contacted the wire so erected and maintained with the rod which extended about 15 feet out from where he was working and 10 feet from the edge of the building and in our opinion clearly indicates that this type of accident was not reasonably foreseeable. (*Sweatman* v. *Los Angeles Gas & Elec. Corp., supra* at pages 322 and 326; *Benard* v. *Vorlander, supra* at p. 443.) Further, on the question of foreseeability, it would seem that since Penal Code, section 385, makes it a misdemeanor to move materials within 6 feet of an overhead high-voltage wire, and since Electrical Safety Order 2603 prohibits an employer from allowing an employee to come within 6 feet of high-voltage lines himself, or with materials, that P. G. & E. may well be said to have safely assumed that appellant and his employers would have obeyed such standards and that appellant would not have brought the rod within such a dangerous distance of the wires. (*Benard* v. *Vorlander, supra* at 443.) The mere fact that the power line is not insulated (*Sweatman* v. *Los Angeles Gas & Elec. Corp., supra,* at pp. 319 and 323; *Benard* v. *Vorlander, supra,* at p. 437), or that the defendant knows that improvements are being made near his power line (*Lewis* v. *Pacific Gas & Elec. Co., supra,* at p. 63), does not of itself give rise to liability where, as here, there is no reason to know that equipment used will be in dangerous proximity to the wires.

The appellant contends that it was error for the court to deny his motion to reopen his case, made before sub-

mission to the jury, to present allegedly new evidence. Such a motion is addressed to the sound discretion of the trial court (*Weber* v. *Marine Cooks' & Stewards' Assn.* (1949), 93 Cal.App.2d 327, 340 [208 P.2d 1009] and denial will not be upset absent an abuse of discretion (*Kan* v. *Tsang* (1949), 90 Cal.App.2d 538, 542 [203 P.2d 86]). Before denial the judge listened to appellant's arguments in favor of reopening the case which indicated the evidence offered would show all other P.G. & E. wiring in the area was covered by weatherproofing, that such weatherproofing would have protected him on brief contact, and that bare wire did not meet local standards. Counsel indicated that over the week end while the court was recessed he and his expert visited the area to ascertain if alternate routes had been available for P.G. & E. to supply power to the area during construction. There was no alternate route, but while in the area they noticed that all the wiring in the area was weatherproofed except where it had been relocated for the Cal Pak construction. The issues of breach of duty for failure to insulate and duty based on engineering standards were both before the court during the trial, and the status of the wiring in the area was readily ascertainable to one who would visit the locale of the accident. There was no abuse of discretion in denying the motion to reopen the trial for further testimony since no good excuse was offered for failure to produce the evidence before submission (*Kan* v. *Tsang, supra*) and the evidence was really not new but merely developed after trial when it could have been developed before trial (*Weber* v. *Marine Cooks' & Stewards' Assn., supra*).

Appellant's motion for new trial based upon allegedly newly discovered evidence was properly denied since it is governed by similar principles to those governing reopening his case. Evidence justifying new trial among other requirements must be newly discovered, undiscoverable by reasonable diligence. (*Kirschbaum* v. *McCarthy* (1936), 5 Cal.2d 191, 198 [54 P.2d 8]; *Bliss* v. *Security-First Nat. Bank* (1947), 81 Cal.App.2d 50, 59 [183 P.2d 312].) The facts that the evidence was not new, but merely newly developed, and that no adequate showing of diligence was made, discussed in regard to discretion to reopen the case before submission, control here and indicate the court did not abuse its discretion in denying the motion for new trial.

While other points are raised by the parties on this appeal, there is no necessity for their discussion in view of our deter-

mination that the trial court could declare as a matter of law that there was not sufficient evidence to go to the jury, for there was no evidence of negligence contributing to the cause of the accident on the part of P.G. & E.

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied December 16, 1960.