[Civ. No. 34. Fifth Dist. Feb. 26, 1962.]

SCOTT WESLEY McKENZIE, a Minor, etc., et al., Plaintiffs and Appellants, v. PACIFIC GAS AND ELECTRIC COMPANY, Defendant and Respondent.

ROY STUMPFF, Plaintiff and Appellant, v. PACIFIC GAS AND ELECTRIC COMPANY, Defendant and Respondent.

732

Oren, McCartney & Sells and Donald E. Oren for Plaintiffs and Appellants.

Richard H. Peterson, Henry J. LaPlante and Mack, Bianco, King & Eyherabide for Defendant and Respondent.

## FACTS

STONE, J.—These two separate actions were consolidated for trial; judgment of nonsuit was entered in each action; plaintiffs have appealed in both cases. The plaintiffs-appellants in one action are the widow and surviving children of Frank Wesley McKenzie, who was electrocuted when the tip of a television tower which he was employed to help move, touched a high tension line maintained by defendant-respondent, Pacific Gas & Electric Company. The other action was brought by plaintiff-appellant Roy Stumpff, a fellow employee of McKenzie, who suffered serious burns in the same accident.

The television tower was assembled and erected by Horace Woods on property in the City of Bakersfield owned by Woods and occupied by decedent McKenzie. The metal tower was approximately 70 feet high, 4 or 5 feet square at the base, and about one foot square at the top. In 1949 or 1950, the materials for the tower were assembled on the lawn of the premises, welded together, raised with an A-frame, and bolted to a concrete foundation. Plaintiff Stumpff assisted in the installation, but decedent McKenzie had nothing to do with construction of the tower. He moved onto the premises approximately two years prior to the date of the accident.

Defendant P. G. & E. installed high voltage lines along the street on which the property fronted, in the spring of 1957, a few months before the accident happened. Defendant had a franchise to run electrical wires along the county right-of-way, extending 30 feet on each side of the center line of the street. The evidence disclosed, however, that the power lines encroached upon the property in question some 3.75 to 3.95 feet. Similarly, the lines encroached a like distance over the adjoining property owned by plaintiff Stumpff.

At the time of the accident McKenzie was regularly employed by Horace Woods, and plaintiff Stumpff was an occasional employee. Although neither McKenzie nor Stumpff was aware of the day the tower was to be moved until the morning the job was commenced, both had known about the job for approximately a month. On June 23, 1957, the day of the

accident, Horace Woods, with his father, Hugh Woods, arrived at the premises with a truck upon which was mounted an A-frame. The truck was spotted in the yard and used first to remove a carport which stood in the way of the tower. There was some evidence that after removal of the carport, but before commencing work on the tower, Hugh Woods asked Horace Woods if there would be plenty of clearance, to which Horace Woods replied that there would be. As employees working under the direction of Horace Woods, the men loosened and removed the nuts from the bolts holding the tower to its concrete base, attached the A-frame, and lifted the tower. The tower was raised so that its base was one or two feet off the ground. Hugh Woods had attached a rope to the base of the tower but was standing beneath the top of the tower in the sidewalk area. Horace Woods, the employer, was at the controls of the truck, which faced east, and he also operated the A-frame, which faced west. Plaintiff Stumpff and decedent McKenzie were facing south, each holding the tower with both hands. Their attention was directed to the base and the problem of keeping it above the ground so that the two bottom legs were free to move southward, that is, so that the base could move southward as the top of the tower was lowered. For some unexplained reason the base caught or became imbedded in the ground, and the top tilted northward as it lowered toward the ground. It struck the high tension wires, causing the electrocution of McKenzie and the severe burning of Stumpff, resulting in serious permanent injuries.

At the conclusion of plaintiffs' presentation of evidence, defendant moved for a nonsuit in each case. The motions were granted, and in each case a judgment of nonsuit followed. The grounds of appeal in each case are identical and the matter has been presented by appellants and respondent as though this were a single appeal. Appellants advance four reasons why the trial court erred in granting a nonsuit: One, that the evidence disclosed a situation within the doctrine of res ipsa loquitur; two, that defendant was engaged in an ultrahazardous activity, imposing absolute liability; three, that defendant was guilty of trespass in maintaining its lines over private property without permission, which trespass was a proximate cause of the accident; four, that under the rules of ordinary negligence, defendant should have foreseen the possibility of an accident of similar nature and guarded against its occurrence.

## Nonsuit

█ This appeal is governed by the rule that in reviewing a judgment of nonsuit the appellate court must view the evidence in the light most favorable to plaintiffs, disregarding any conflicting evidence. (*Raber* v. *Tumin,* 36 Cal.2d 654, 656 [226 P.2d 574]; *Andre* v. *Allynn,* 84 Cal.App.2d 347, 348 [190 P.2d 949].) It has also been said by the Supreme Court that:

"A motion for nonsuit may properly be granted '. . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' [Citations.] 'Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury.' [Citations.]" (*Palmquist* v. *Mercer,* 43 Cal.2d 92, 95 [272 P.2d 26].)

## Res Ipsa Loquitur

█ "The doctrine of res ipsa loquitur has three conditions: (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." (Prosser, Torts, p. 295; *Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258]; *Hendershott* v. *Macy's,* 158 Cal.App.2d 324, 328 [322 P.2d 596].)

█ The accident here was caused by the top of the tower being lowered onto a high tension line. Although defendant owned and maintained the line, the tower was not within its "control" in any sense of the word. Defendant was not aware that the tower was being moved; it did not direct any phase of the operation; it made no suggestions. Since defendant had nothing to do with moving the tower, res ipsa loquitur is not applicable.

█ Furthermore, it was never intended that res ipsa loquitur should apply to a case where, as here, all of the facts

surrounding the happening of the accident were disclosed by plaintiffs' evidence. Nothing is unexplained, nothing is left to inference, and plaintiffs must stand or fall on their specific proof. (*Billeter* v. *Rhodes & Jamieson, Ltd.*, 104 Cal.App.2d 137, 147 [231 P.2d 93]; *Hendershott* v. *Macy's, supra*, p. 327.)

## ULTRAHAZARDOUS ACTIVITY

If, as plaintiffs contend, the maintenance of electric power lines constitutes an ultrahazardous activity per se, then the granting of nonsuit was error. ██ One who undertakes an ultrahazardous activity is liable to every person who is injured as a proximate result of that activity, regardless of the amount of care that he uses. (3 Rest., Torts, §§ 519-524, pp. 41-53; *Luthringer* v. *Moore*, 31 Cal.2d 489 [190 P.2d 1]; *Green* v. *General Petroleum Corp.*, 205 Cal. 328 [270 P. 952, 60 A.L.R. 475].) ██ However, the courts of this state have not yielded to the argument frequently made to them that the maintenance of electric power lines is an ultrahazardous activity. The standard of care of one engaged in maintaining electric power lines is defined in *Beresford* v. *Pacific Gas & Elec. Co.*, 45 Cal.2d 738 [290 P.2d 498, 54 A.L.R.2d 910], wherein the court commented, at pages 745-746:

"Principles recently reaffirmed by this court in *Dunn* v. *Pacific Gas & Elec. Co.* (1954), 43 Cal.2d 265, 273 [272 P.2d 745] [citation], are that 'On the subject of negligence the standard of care is, that one maintaining wires carrying electricity is required to exercise the care that a person of ordinary prudence would exercise under the circumstances. Among the circumstances are the well known dangerous character of electricity and the inherent risk of injury to persons or property if it escapes. Hence, the care used must be commensurate with and proportionate to that danger. [Citations.] Specific application of that standard requires that wires carrying electricity must be carefully and properly insulated by those maintaining them at all places where there is reasonable probability of injury to persons or property therefrom. [Citations.]' " (See *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 231 [282 P.2d 69]; *Perrine* v. *Pacific Gas & Elec. Co.*, 186 Cal.App.2d 442 [9 Cal.Rptr. 45].)

## TRESPASS

Plaintiffs assert that defendant, by trespassing upon the property owned by Wood and occupied by McKenzie, brought upon itself strict liability in the maintenance of its power

lines. In discussing defendant's trespass and resultant liability, plaintiffs have included arguments which properly belong with their discussion relating to ultrahazardous activity and to negligence and proximate cause. Since we have discussed ultrahazardous activity, we shall not recur to the observations made above, but simply add that we cannot see how defendant's trespass, that is, maintaining its line approximately 4 feet beyond the easement, changed its duty of care from reasonable care under the circumstances, as defined in *Beresford* v. *Pacific Gas & Elec. Co., supra,* to one of absolute liability. We shall hereinafter discuss negligence and proximate cause under that heading.

In urging defendant's absolute liability by reason of trespass, plaintiffs cite the classic case of *Fletcher* v. *Rylands,* 3 House of Lords 330, wherein a defendant impounded water on its property which escaped and flooded plaintiff's adjoining property. The court imposed absolute liability. *Green* v. *General Petroleum Corp., supra,* is cited since it is a California case which holds that a defendant who drilled for oil on its own property did so at the risk of absolute liability for damage caused to adjoining property by escaping mud and debris. Other California cases of similar import are cited by plaintiffs, but in each case the adjoining landowner did nothing to bring about the damage. The water, mud or other substance flowed or was cast upon the plaintiff's land. The act of trespass alone caused the injury. Here, the injury was caused when the tower was lowered into contact with defendant's wires. That the wires encroached or trespassed over private property some 4 feet beyond the easement line did not in and of itself cause the damage, as did the trespass in *Fletcher* v. *Rylands, supra, Green* v. *General Petroleum Corp., supra,* and in the other cases cited by plaintiffs. It is true the trespass created a condition which was a factor in the accident, but this did not thrust absolute liability upon defendant. The trial judge correctly analyzed the situation in regard to the trespass when he commented, "It is like saying that if I had driven 40 miles an hour instead of 30 miles an hour, I wouldn't have been in the intersection when I got hit."

### Negligence and Proximate Cause

Having determined that the principles of res ipsa loquitur, ultrahazardous activity, and absolute liability for trespass are not applicable, the case is narrowed to the question of negligence and proximate cause. That is, using the standard of

the reasonable man of ordinary prudence, should defendant have foreseen that the accident might have occurred?

When the tower was installed, the north, or street side, of the property was open. For five or six years thereafter the tower could have been lowered by simply tilting the top northward until it touched the ground. In 1957 defendant hemmed in the tower by placing high tension lines along the north border of the lot. The house in which McKenzie lived stood behind or immediately south of the tower, and the lots on either side, east and west, were improved. Thus, the only way to lower the tower after the construction of defendant's high line was by moving the base east far enough to clear McKenzie's house, and then south far enough to permit the top to clear the wires on the north. Whether defendant should have foreseen the possibility of the legs of the tower base catching in the earth as it was moved east and south, and the top of the tower touching the wire, is a question of fact.

It was not necessary that defendant should foresee that the identical accident might occur and the same consequences follow. The question is whether it was reasonably foreseeable that injury was likely to occur by reason of the construction of the power line in front of the tower. (*Osborn* v. *City of Whittier*, 103 Cal.App.2d 609, 615 [230 P.2d 132]; *Werkman* v. *Howard Zink Corp.*, 97 Cal.App.2d 418, 425 [218 P.2d 43]; *Jackson* v. *Utica Light & Power Co.*, 64 Cal. App.2d 885, 892 [149 P.2d 748].)

Defendant argues that plaintiffs should have notified it to deenergize the line before they moved the tower. A jury might conclude that the ordinary person is unfamiliar with electricity and unaware that high tension lines or segments thereof can be deenergized without disrupting service to other users along the entire line. It could as well be argued that defendant, as a person of ordinary prudence, upon erecting a high tension line in front of the tower should have notified the owner that if, in the future, the tower were to be moved, defendant would deenergize the line upon notice.

Were the case submitted to a jury on the evidence adduced by plaintiffs alone, which is the record before us, a jury might find that under the circumstances and considering the knowledge which defendant had of the conditions, it should have insulated the lines in the area of the tower. In *Polk* v. *City of Los Angeles*, 26 Cal.2d 519, 525 [159 P.2d 531], the court said:

"On the subject of negligence the standard of care is, that

one maintaining wires carrying electricity is required to exercise the care that a person of ordinary prudence would exercise under the circumstances. Among the circumstances are the well known dangerous character of electricity and the inherent risk of injury to persons or property if it escapes. Hence, the care used must be commensurate with and proportionate to that danger. [Citations.] Specific application of that standard requires that wires carrying electricity must be carefully and properly insulated by those maintaining them at all places where there is a reasonable probability of injury to persons or property therefrom. [Citations.] Upon those controlling such instrumentality and force is imposed the duty of reasonable and prompt inspection of the wires and appliances and to be diligent therein. [Citations.] And, in the places where there is a probability of injury, they must not only make the wires safe by proper insulation, but as stated in *Dow* v. *Sunset Tel. & Tel. Co.,* 157 Cal. 182, 186 [106 P. 587], 'keep them so by vigilant oversight and repair.' "

The conduct of the defendant viewed in the light of a reasonable man in the same circumstances presents a question of fact warranting submission of these fact issues to the jury.

Defendant argues that the nonsuit was proper in that plaintiffs violated Penal Code, section 385, by permitting the tower to come within 6 feet of a power line carrying more than 750 volts. Defendant relies upon *Perrine* v. *Pacific Gas & Elec. Co., supra,* 186 Cal.App.2d 442, at page 448, which, by way of dicta, suggests that the 6-foot clearance required by Penal Code 385 might be taken into consideration in weighing the foreseeability of the accident. In the case before us, however, the violation was not that of Stumpff and McKenzie, but rather their employer, Woods. There is no evidence indicating that either employee was aware of the position of the top of the tower, or that it was within 6 feet of the power line. To the contrary, the evidence is that they were facing the opposite direction, the direction in which they were guiding the tower legs. (See *Dunn* v. *Pacific Gas & Elec. Co., supra,* 43 Cal.2d 265, 276; *Nevis* v. *Pacific Gas & Elec. Co.,* 43 Cal.2d 626, 633 [275 P.2d 761].)

The same reasoning applies to defendant's contention that the record discloses contributory negligence by McKenzie and Stumpff as a matter of law. Their employer was in charge of the operation, and there is no evidence indicating that either of them did anything other than lift and guide the bottom

legs of the tower as directed by their employer. In the *Perrine* case it was the plaintiff employee himself who extended a steel rod from the building upon which he was working, until it made contact with a high tension line. As pointed out above, McKenzie and Stumpff, as employees, were required by their duties to face away from the wires and look down to be certain that the bottom legs cleared the ground. In *Ostertag* v. *Bethlehem etc. Corp.*, 65 Cal.App.2d 795 [151 P.2d 647], the court, in considering the question of whether an employee was guilty of contributory negligence under circumstances similar to the facts in the case before us, said, at page 801:

"Respondent was a helper acting under the immediate direction of the journeyman Schnipper. At Schnipper's direction he was working with him in the place where he was injured. His work compelled him to assume a position with his back to the crane. The courts have often recognized that where a person must work in a position of possible danger the amount of care which he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case. [Citations.] Whether or not respondent was guilty of contributory negligence on all the facts disclosed by the evidence was a jury question." (See *Austin* v. *Riverside Portland Cement Co., supra*, 44 Cal.2d 225, 234.)

To summarize, the issues of negligence, contributory negligence, and proximate cause present questions of fact upon which reasonable minds might differ. Since plaintiffs demanded a trial by jury, they are entitled to have these factual questions determined by a jury. In *Toschi* v. *Christian*, 24 Cal.2d 354 [149 P.2d 848], the Supreme Court said, at page 360:

"Standards of care are typically relative; rules of law are basically absolute. Hence, in regard to negligence, any attempt to screen factual conduct into legal classifications through a sieve of absolute law will be impracticable whenever the related circumstances admit of materially conflicting inferences. In other words, the actor's conduct must always be gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care then such doubt must be resolved as a matter of fact rather than of law. [Citations.]" (See *Jackson* v. *Utica Light & Power Co., supra*; *Been* v. *Lummus Co.*, 76 Cal.App.2d 288, 292 [173

P.2d 34] ; *Nevis* v. *Pacific Gas & Elec. Co., supra,* 43 Cal.2d 626, 633.)

The judgment is reversed.

Conley, P. J., and Brown, J., concurred.

A petition for a rehearing was denied March 26, 1962.